## WARREN v. CONNOR et al.

### Sac. No. 121; December 15, 1896.

#### 47 Pac. 48.

**Estoppel in Pais.**—In an Action Against **C.** and Her Son for **Conversion** of farming implements on a certain ranch, it appeared that C. and her husband sold such ranch, and all farming implements on it, to one H.; that afterward H. sold all the personal property to plaintiff; that, before the sale to H., the son bought all the implements on the ranch, and farmed the land as a tenant; that H.'s foreman, in company with the agent of C. and husband, made an inventory of the implements on the ranch; that the son did not point them out; that before the transfer of the personal property the son told H.'s agent that the implements were his, and the agent knew he was using them; and that, at the time, defendants were living in one of the houses on the ranch, the son being a tenant of H. There was no claim that the son had in any manner misled H. as to the ownership of the implements. Held, that the son was not estopped from asserting his ownership as against H. or plaintiff.

APPEAL from Superior Court, Sacramento County; A. P. Catlin, Judge.

Action of trover by M. J. Warren against Sarah J. Connor and W. W. Connor for the conversion of certain personal property, consisting principally of farming implements, tried to the court without a jury, in which there was a judgment for plaintiff. From an order denying their motion for a new trial defendants appeal. Reversed.

Hiram W. Johnson for appellants; Armstrong & Bruner and J. C. Ball for respondent.

HAYNES, C.—This appeal is by the defendants from an order denying their motion for a new trial. The action is in trover for the conversion of certain personal property, consisting principally of farming implements, of the alleged value of $660. The cause was tried by the court without a jury, and the court found that the defendants had converted to their own use certain specified portions of the said property, of the value of $594. The plaintiff claims title to the property in controversy through an alleged sale thereof by Thomas Hovenden to her. This property was upon a large ranch containing about three thousand nine hundred acres, which was formerly owned by George D. Connor and the defendant Sarah J. Connor, his wife. On December 23, 1890, said George D. Connor and Sarah J. Connor entered into a contract with said Hovenden to exchange said ranch for certain real estate owned by Hovenden. This contract provided that said Hovenden should have, in addition to the real estate, "one-fourth of all growing crops, and all the farming implements of every description now upon said premises, and also the McClennan and the Sanders barn, with all the hay, straw, etc., therein, for the sum or price of $34 per acre." The first parties also agreed in and by said contract to sell to Hovenden "whatever hay is left in the home barn upon said premises for the sum or price of $10 per ton; also, one hundred and sixty head of cattle, more or less, now upon said premises, at the sum or price of $15 each." On February 17, 1891, said George D. Connor and wife, by L. F. Ward, their attorney in fact, executed to Hovenden a bill of sale of the following described personal property, then on the ranch known as the "Connor Ranch," namely: "158 head of cattle,

valued at $15 each; 27 hogs of 219 pounds, 87 hogs of 100 pounds, 50 pigs, in all valued at $700; 50 tons hay at $10 each, valued at $500; 70 sacks of wheat, 140 pounds, at 1¼ per pound, valued at $122; also, all the farming implements and vehicles, including wagons on said ranch on the 23rd day of December 1890, together with one-fourth of all growing crops upon said ranch, but excepting therefrom one covered spring wagon and all buggies—it being the intention of this instrument to carry into effect a certain agreement made by the above-named parties of the first part with the party of the second part, and dated the 23rd day of December, A. D. 1890.'' Mrs. M. J. Warren, the plaintiff in this action, claims title to the property in controversy under the following instrument:

"San Francisco, October 19, 1891.

"Mrs. M. J. Warren bought of Thos. Hovenden all the personal property that Geo. D. Connor and Sarah J. Connor sold me on the Connor ranch, Sacramento county, California, saving and excepting what was delivered to late Mr. Arthur Bunster to my account. Received payment in full, ten dollars. I authorize the said Mrs. M. J. Warren, who now lives on the ranch, to take full possession of the property as her own wherever she may find it.

"THOS. HOVENDEN."

The defendant W. W. Connor claims to be the owner of all the property described in the findings, and, as to the hay, it is contended that Hovenden and his agent received all the hay mentioned in the contract and bill of sale above mentioned. In relation to his ownership of the farm implements in controversy, the defendant W. W. Connor testified, in substance: That, about eleven years before the trial, he and his two brothers, George T. and R. L. Connor, formed a copartnership under the firm name of Connor Bros., and for about three years thereafter said copartnership farmed a large part of the ranch. That, at the time they commenced farming, most of the implements then on the farm were old and nearly worn out. That the firm purchased farming implements with their own money, and in their own name, sufficient to run the place. This copartnership continued for about three years, when the defendant W. W. Connor bought out the interest of his brothers, and he continued, to the time of the sale to Hovenden, to farm the land in the same manner as other ten-

ants paying rent therefor. That said implements sued for were purchased in part by said copartnership, and in part by said defendant after the dissolution of the partnership, and while he was farming the land on his own account. He specified the persons from whom he purchased all, or nearly all, of the implements included in the findings of the court, and as to these general facts there is no contradiction of his testimony.

It is contended, however, on behalf of the plaintiff, that the defendant W. W. Connor had seen the contract made by his father and mother with Hovenden in December, 1890, and also that he was present when the personal property was delivered over to Arthur Bunster, as the agent of Hovenden, and that he did not make any objection. But whatever farming implements were bought by Hovenden were bought in December, and their value was included in the price of the land, and there is no evidence that W. W. Connor, either by representations or conduct, misled him as to their ownership. Counsel for respondent is mistaken in saying that defendant W. W. Connor, on his cross-examination, ''said he signed the agreement containing the clause, 'together with one-fourth of all the growing crops, and all farming implements, of whatsoever description, now upon said premises.' '' At the folio cited by counsel, defendant was asked: ''Q. You say you saw that agreement? A. I did.'' Besides, the contract itself was put in evidence, and it does not show such signature. The only evidence touching any signature by said defendant occurs in the testimony of Dalzell, who was Hovenden's foreman on the ranch, Bunster being the agent who received the cattle and hogs that were delivered in February. Dalzell stated that he (W. W. Connor) ''put his name to the signature of the whole transaction. I do not know where the paper is now that he signed. I took an inventory, at the time, of all the property that was turned over, and pointed out as the property of Mr. Hovenden.'' The witness gave no explanation as to what paper it was that was signed by defendant, nor for what purpose it was made. He produced a book upon the trial in which he had made an inventory of all the farming implements, but he did not state where they were, nor by whom, if by anyone, they were shown to him; but in his affidavit made in reply to the affidavit of Mr. Ward, the attorney in fact of George D. and Sarah J. Connor, and which was read

upon defendant's motion for a new trial, Dalzell said "that on the thirteenth day of February, 1891, this deponent was driven in a buggy by said L. F. Ward over the said Connor ranch, and that while he and said L. F. Ward were in said buggy, as aforesaid, this deponent noted down in his pocket-book the several agricultural implements lying in different places on said ranch, and made an inventory thereof." It may be fairly assumed that said inventory was the one produced on the trial, and the circumstances under which it was made shows not only that there was no gathering up of the implements and formal delivery thereof, but that the defendant W. W. Connor did not point out the implements to the witness. The said defendant further testified that, at the time the bill of sale was made, his father had upon the ranch a truck wagon, a mower, one or two single plows, two seed sowers, and a hay-rake; that at the time the cattle and hogs were transferred, in February, there was nothing said about the farming implements; that prior to said transfer he had many conversations with Mr. Bunster about the ranch, and told him that the farming implements were his; and that Bunster knew that he was using them. The evidence that the farming implements in controversy were purchased by and were the property of the defendant W. W. Connor at the time the contract of sale was made with Hovenden by his father is uncontradicted. His father could not, by any contract he could make with Hovenden, vest in him any right or title thereto, and the question, therefore, is whether the defendant is estopped by his conduct from asserting his ownership as against Hovenden or his transferee. There is no pretense that the defendant W. W. Connor was present at the time the contract was made in December, or in any manner misled Hovenden as to the ownership of the farming implements. They were not sold as separate property, but were included in the price paid for the ranch, while all the other personal property was purchased by Hovenden, as distinct from the ranch, at certain specified prices, and that property was not delivered or paid for until the number and value of the cattle and hogs were ascertained, in February. It is true, the defendants were still living in one of several houses upon the ranch, but W. W. Connor was there as the tenant of Hovenden of a portion of the land, cultivating the same upon shares, and using said implements; and Bunster, the agent of Hoven-

den, and the person to whom the other personal property was delivered, was told by the defendant, prior to the execution of the bill of sale, that the farming implements were his, and this testimony given by defendant is not contradicted. All the conversations with said defendant, testified to by the plaintiff and her son, occurred after plaintiff's purchase from Hovenden, and his alleged statements in those conversations, therefore, could not have influenced her purchase. We fail to find any evidence which would justify a finding that W. W. Connor was estopped by his conduct or declarations from asserting his ownership, either as against Hovenden or the plaintiff, as to the farming implements. As to the hay there was a direct conflict; but as the court did not find the value of the hay separately, but lumped the value of all the property, the judgment cannot be modified, and a new trial is therefore necessary.

In view of the conclusion above stated, it is not necessary to notice the affidavits of new evidence, and the counter-affidavits filed thereto, further than to say that in our judgment they strengthened defendants' grounds for a new trial. It should be added, in view of a new trial, that the only ground of the alleged liability of the defendants is for a conversion of the property described in the complaint. We find in the record no evidence of a conversion by the defendant Sarah J. Connor; and if, upon another trial, a conversion should be shown to have been made by only one of the defendants, judgment should be rendered in favor of the other. The judgment and order appealed from should be reversed.

We concur: Searls, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.